[No. 11104. *En Banc.* August 18, 1913.]

HARRY A. JONES, *Appellant*, v. CLARA B. JONES, *Respondent*.[1]

APPEAL—DISMISSAL—MOTIONS—AFFIDAVITS. Upon motion to dismiss an appeal, facts occurring subsequent to the signing and entering of the judgment appealed from, and not in dispute, may be shown by affidavits.

DIVORCE—ALIMONY—ENFORCEMENT OF ORDER—NOTICE—CONTEMPT. Where, after announcement of a decree of divorce directing the husband, within a day fixed, to make a deed of property awarded the wife or suffer judgment in a specified sum, the husband and his attorney left the courtroom, he is not bound by a subsequent announcement in his absence withdrawing the optional feature of the deed, and is not guilty of contempt in failing to make the deed within the time limited.

DIVORCE—TEMPORARY INJUNCTION — VIOLATION—DISSOLUTION—FINAL JUDGMENT—CONTEMPT. Where interlocutory orders in a divorce action, restraining the plaintiff from leaving the jurisdiction of the court and requiring him to make a deed of certain property awarded to the defendant, are not carried into the final judgment, they are of no force and plaintiff cannot be punished for contempt for a violation of the orders before entry of the final judgment; even though the final judgment recited that he was in contempt, since such recital did not continue the orders in force.

APPEAL—DISMISSAL—RIGHT TO APPEAL — INCONSISTENT POSITION SINCE JUDGMENT—CONTEMPT—DIVORCE. The fact that a husband, divorced by the superior court of this state and enjoined from

[1]Reported in 134 Pac. 528.

making any claim to property in British Columbia awarded the wife, defended an action brought by the wife in British Columbia to enforce the divorce decree, denying the jurisdiction of the courts of this state and asserting title to the property, is not ground for the dismissal of his pending appeal from the decree of divorce, even though he commenced the divorce action asserting jurisdiction in the courts of this state, and even if his conduct in asserting title was contumacious; since appeal from a judgment is a matter of right although appellant was guilty of contempt in disobeying the judgment appealed from; and since his defense to the action in British Columbia may be necessary to preserve rights to the property in case the courts of this state are without jurisdiction.

Motion to dismiss an appeal from a judgment of the superior court for King county, Humphries, J., entered February 11, 1913, upon findings in favor of the defendant, in an action for a divorce, tried to the court. Denied.

*Carkeek, McDonald & Kapp* (*Bausman & Kelleher*, of counsel), for appellant.

*Kerr & McCord* and *Donworth & Todd*, for respondent.

MAIN, J.—The purpose of this action was to obtain a decree of the court severing the bonds of matrimony then existing between the plaintiff and the defendant. The issues were framed by the complaint, the answer and cross-complaint, and the reply. In due time, the cause came on for trial before the court without a jury. The trial was concluded on the 5th day of February, 1913. Thereupon the court, by oral opinion, decided that the defendant would be granted a decree upon her cross-complaint. One of the important questions in the case was that of the property rights of the parties. On this question, the court announced that certain property located in British Columbia which had been previously conveyed to the defendant by the plaintiff should be retained by her as her sole and separate property; and in addition to this, that she should be awarded a property in Vancouver, B. C., which was designated as the Hastings Street property. To this property, the court stated, the plaintiff would be required to make and execute a deed therefor in

favor of the defendant and deposit it in the registry of the court. A colloquy then took place between the court and the respective counsel as to the time when the deed should be executed and deposited. Without following the details of this colloquy, it is sufficient to say that it was finally announced by the court that the plaintiff would have until the following Saturday, February 8, 1913, to conform to this requirement; and in event the deed was not made and deposited, a judgment would be entered against the plaintiff and in favor of the defendant in lieu thereof in the sum of $250,000. Immediately thereafter, and while the parties were all before the court, an order was prepared and entered enjoining and restraining the plaintiff from leaving and departing from the county of King, state of Washington, until the further order of the court. The plaintiff and his counsel then departed from the courtroom and immediately thereafter the court stated, as appears by the record:

"The Court: I do not think I will do that as an optionary matter about making this deed. He cannot take the option whether he will give the deed or take the judgment. He will make the deed if he is here, or I will put him in jail if he does not."

On Saturday, February 8, 1913, the date fixed for the deposit of the deed in the registry of the court, counsel for the respective parties appeared before the court. The court was then informed that the plaintiff had departed from the jurisdiction of the court in violation of the order which had been previously entered. The plaintiff did not execute the deed as required, or at all. The court then announced that it would enter a judgment against the plaintiff and in favor of the defendant for alimony in the sum of $300,000, and $10,000 as attorney's fee.

As above stated, it appearing that the plaintiff had departed from the jurisdiction in violation of the court's order, the court ordered that an attachment issue forthwith to the sheriff directing him to attach the person of the plaintiff and

bring him before the court to show cause if any he might
have why he should not be punished for contempt. This
order was signed and entered on February 8, 1913. On Feb-
ruary, 11, 1913, findings of fact and conclusions of law and
final judgment were signed and filed. The judgment awarded
to the defendant the property above referred to as having
been previously conveyed to her, and the plaintiff was en-
joined from making or asserting any claim or demand for or
any right, title or interest therein or thereto. The custody
of the son, Harold A. Jones, was awarded to the plaintiff,
but it was recited that, the plaintiff being in contempt of
court and having left the jurisdiction of the court in dis-
obedience of the court's order, that the decree awarding the
custody of the boy to the plaintiff should not take effect until
he should purge himself of the contempt. The judgment also
decreed that the defendant be awarded alimony in the sum of
$300,000, and $10,000 as attorney's fee.

On February 18, 1913, the plaintiff gave notice that he ap-
pealed from the judgment entered on February 11, 1913.
No bond was filed superseding the judgment. Within a few
days thereafter, upon a transcript of the judgment, suit was
brought in the courts of British Columbia. In that action,
Harry A. Jones (the plaintiff here, the defendant there)
presented an answer in which he pleaded that the superior
court of the state of Washington in and for the county of
King had no jurisdiction of the cause in which said judg-
ment was entered for the reason that neither the plaintiff
nor the defendant at the time the action was tried were sub-
jects of or resident or domiciled in the state of Washington,
and were not at any time subject to the jurisdiction of that
court. The answer also makes claim to the property which,
in the judgment of February 11, 1913, he was restrained
from making any claim to. In the divorce action, the com-
plaint verified by appellant stated:

"That the plaintiff is now a *bona fide* resident of King
county, in the state of Washington, and has been a *bona*

*fide* resident of the state of Washington for more than one year immediately last past."

On March 25, 1913, the respondent filed in this court her motion to dismiss the appeal of the appellant for the reason that he had fled the jurisdiction of the court in disobedience of its order and was in contempt thereof; and as an alternative · motion, that the appellant be required within a fixed time to return and submit himself to the jurisdiction of the court, and in the event he should fail or refuse to do so within the time fixed, that then his appeal be dismissed. These motions were heard upon a transcript certified by the clerk of the superior court, which contains a copy of the pleadings, the orders, findings, and judgment of the court, the motion for new trial, and the cost bond; also upon affidavits setting forth facts which are not contained in the transcript. The facts as above stated do not, however, appear to be in dispute.

The questions to be determined upon the motion to dismiss the appeal are: (1) the power of the court to hear the matter upon affidavits; (2) whether the appellant has been guilty of contempt; and (3) whether the conduct of the appellant in attacking the jurisdiction of the courts of this state in the courts of British Columbia, and the fact of his disobedience to the final judgment, are sufficient to warrant the dismissal of the appeal, either absolutely or provisionally.

I.   The first question presented is the right or power of the court to consider facts which occurred subsequent to the signing and entering of the final judgment and which must be shown by affidavit. It is argued that, this not being a court of general jurisdiction, it can consider only those facts which are properly certified by the superior court, or contained in the clerk's transcript. In support of this position, the case of *Griffith v. Griffith*, 71 Wash. 56, 127 Pac. 585, 128 Pac. 636, is cited. In that case it was held, overruling previous decisions, that this court would not entertain, pending an appeal in divorce cases, original applications for suit

money, attorney's fees, and alimony. But it was not there held that the court lacked authority to have conveyed to it facts not in dispute occurring subsequent to the taking of the appeal which show that the controversy had ceased, or that the appellant had abandoned or waived the right of appeal. It has been repeatedly held that, where the controversy furnishing the basis for the litigation has ceased to exist, the facts showing such cessation, when not in dispute, may be presented by affidavit. *Hice v. Orr*, 16 Wash. 163, 47 Pac. 424; *Wood v. Seattle*, 23 Wash. 1, 62 Pac. 135, 52 L. R. A. 369; *Kelso v. American Investment & Imp. Co.*, 48 Wash. 5, 92 Pac. 673. In the last of these cases, it is said:

"The motion to dismiss is supported by the affidavit of John W. Roberts, and the affidavit contains full copies of the findings of facts, conclusions of law, and the final decree of the court after trial, showing that the temporary receivership has ceased and that a permanent receiver has been appointed. The affidavit not being denied, it is sufficient for the reasons heretofore stated to challenge our consideration."

In the present case, the material facts which have been shown by affidavit are not in dispute. This case, therefore, falls within the rule announced in the above decisions.

II. The next subject of inquiry is whether or not the appellant is in contempt, (1) by reason of his failure to execute and deposit a deed in the registry of the court; (2) because of the fact that he departed from the jurisdiction of the court after having been enjoined from doing so; and (3) by reason of the fact that he is now asserting title to property in a foreign jurisdiction in violation of a provision of a final judgment.

In the matter of the deed, as the facts above stated show, on February 5th the court directed the appellant to execute and deposit in the registry of the court a deed for certain property not later than the 8th day of February, and in event of his failure to do so, that judgment would be entered against him in the sum of $250,000. However, after the

appellant and his counsel had departed from the presence of
the court, the court announced that the deposit of the deed
would not be optional, but that the appellant would be re-
quired absolutely to deposit the deed or subject himself to
a penalty for contempt. But this announcement having
taken place when neither the appellant nor his counsel were
present, it would not be binding upon him.

The question then arises, was the appellant's conduct
contumacious in leaving the jurisdiction of the court
after having been restrained and enjoined from doing so?
It appears that an injunctive order was entered on the
5th day of February. Immediately thereafter the appellant
violated the order. On February 8th, the appellant was ad-
judged to be in contempt and an attachment ordered to be
issued for him. On February 11th thereafter, final judg-
ment in the case was entered against the appellant in the sum
of $310,000. The preliminary injunctive order and the
order adjudging him in contempt were neither carried into
the final judgment. It is true that the judgment recites
that, inasmuch as the appellant is in contempt of court, the
awarding of the custody of the son, Harold A. Jones, to him,
shall not be effective until the contempt has been purged.
But this cannot have the operative effect of continuing the
former order in force. It appears to be the law that, where
interlocutory orders are entered during the progress of the
trial of the case and before final judgment, that they must be
carried into the final judgment; otherwise, they have no
binding force. Were this not the law, after final judgment
had been entered, there would be two or more judgments
from which a party might prosecute his appeal, the final
judgment, and the interlocutory orders. In the case of
*Burrichter v. Cline*, 3 Wash. 135, 28 Pac. 367, the defendant
was arrested and held to bail under a claim that he·was an
absconding debtor. The final judgment entered in the case
was a money judgment only, the previous provisional remedy

not being carried forward into the final judgment. It is
there said:

"Clearly, therefore, if the arrest had been perfectly legal
the judgment creditors could now have no remedy against
their debtor by seizure of his person, he having been, by the
final judgment of the court in the cause wherein no relief
of that kind was adjudged, discharged and acquitted of any
claim to take his body in execution."

In *Sweeney v. Hanley*, 126 Fed. 97, it is said:

"It will be noticed that by this final decree the injunction
theretofore granted was not continued in force. Upon the en-
try of the final decree the temporary injunction came to an
end."

It follows, therefore, that the appellant is not in contempt
of court, either by failure to execute and deposit the deed
or by reason of the fact that he departed from the jurisdic-
tion of the court in violation of the interlocutory order.

III.   For the purposes of this case, it will be assumed that
the appellant's conduct in asserting claim of title to the
property situated in British Columbia, after having been en-
joined in the final judgment from so doing, is contumacious.
It must then be determined whether the appellant's conduct
in attacking the jurisdiction of the courts of this state in the
courts of British Columbia, and his disobeying the injunctive
feature of the final judgment, furnish grounds which are
legally sufficient to justify this court in dismissing the ap-
peal either absolutely or contingently, based upon a changed
course of conduct. It is contended that, an appeal being a
matter of right and not a matter of grace, the court
has no power to deny such right to the appellant. But this
argument does not reach the real question. It is not a
question whether the court will deny an appeal where there
is a legal right thereto. But the real question is, has the
conduct of the appellant been such that he has either ex-
pressly or impliedly abandoned or waived his right to an
appeal. The court cannot say that a litigant shall be de-

nied an appeal when he has a legal right thereto; but it can determine, and it is its duty to determine, whether or not the appellant's conduct has been such that he has waived such right.

In criminal cases the rule is well settled that, where the defendant flees from the jurisdiction pending the appeal, he thereby waives his right to prosecute the appeal, unless within a time fixed he returns and surrenders himself into the custody of the proper officer, or give bail for his appearance. *Allen v. Georgia*, 166 U. S. 138; *State v. Handy*, 27 Wash. 469, 67 Pac. 1094. In the first of these cases, the court uses the following language:

"We cannot say that the dismissal of a writ of error is not justified by the abandonment of his case by the plaintiff in the writ. By escaping from legal custody he has, by the laws of most, if not all, of the states, committed a distinct criminal offense; and it seems but a light punishment for such offense to hold that he has thereby abandoned his right to prosecute a writ of error, sued out to review his conviction. Otherwise he is put in a position of saying to the court: 'Sustain my writ and I will surrender myself, and take my chances upon a second trial; deny me a new trial and I will leave the state, or forever remain in hiding.' We consider this as practically a declaration of the terms upon which he is willing to surrender, and a contempt of its authority to which no court is bound to submit. It is much more becoming to its dignity that the court should prescribe the conditions upon which an escaped convict should be permitted to appear and prosecute his writ, than that the latter should dictate the terms upon which he will consent to surrender himself to its custody."

The reason for this rule is based upon the fact that, if the conviction should be sustained, with the defendant absent from the jurisdiction, the judgment could not be executed. And if the cause should be reversed and remanded, a second trial could not be had in his absence.

Under the present status of the two cases, the one here and the other in British Columbia, it appears that the ap-

pellant will continue here to assert that the superior court and also this court have jurisdiction of the case; while in the courts of British Columbia, at the same time, in defense of the action there, he will deny and contest that jurisdiction. If this court should hold that the appeal should be dismissed unless the defendant should cease his attack upon its jurisdiction in the courts of British Columbia, and the appellant should, in obedience to such order, abandon the defense there interposed; and subsequently, if this court should hear the matter upon the merits and determine that the courts of this state have no jurisdiction, it might then be too late for the appellant in the foreign jurisdiction to interpose such a plea in defense of the action there. It would appear that the court should not at this time compel a course of conduct which might have the effect of denying to the appellant a legal right in the other action.

As already stated, it is assumed that the appellant, by violating the final judgment in the matter of asserting title to the property, is guilty of contumacious conduct. The contempt consists in disobedience to the mandate of the judgment the correctness of which is sought to be reviewed upon this appeal. Where, as in this state, an appeal is a matter of right, the party feeling himself aggrieved by a judgment is not deprived of the privilege of having it reviewed by reason of the fact that he may be in contempt for disobedience to such judgment. 2 Cyc. 637; *Brinkley v. Brinkley*, 47 N. Y. 40; *People v. Horton*, 46 Ill. App. 434; *State ex rel. Millett v. Field*, 37 Mo. App. 83; *Hazard v. Durant*, 11 R. I. 195; *Vosburg v. Vosburg*, 131 Cal. 628, 63 Pac. 1009.

We are urged to apply the rule to the present case which is applicable to criminal cases. But it does not appear that the reason for the rule of the criminal cases could uphold such a conclusion. In *Vosberg v. Vosberg, supra,* which is a case in many respects similar to the one here presented, it is said:

"It is contended that there should be applied to this motion the principle upon which certain appeals in criminal cases have been dismissed, because the appellant had broken jail and disappeared; but this contention cannot be sustained. In *People v. Redinger*, 55 Cal. 290, the leading case on the subject in this state, many of the authorities are reviewed, and the decision is put mainly on the ground that a criminal action can proceed only when the accused is in custody, either actual or constructive."

We think there is no legal cause for dismissing the appeal, either absolutely or provisionally, based upon a changed course of conduct. The motion to dismiss is denied.

CROW, C. J., FULLERTON, ELLIS, GOSE, MORRIS, and MOUNT, JJ., concur.

PARKER, J. (concurring)—I concur in the majority opinion except as to what is said touching the effect of appellant's defense being made in the courts of British Columbia, upon his right of appeal in this case. I concur in the result reached on that branch of the case, but prefer to rest my concurrence upon the broader ground that whatever steps appellant may be taking in the courts of British Columbia in the course of judicial procedure under the laws of that province looking to the protection of what he conceives to be his right to property situated there, is wholly beyond the proper concern of this court. I do not think that any such course of conduct on his part can in any legal sense be contumacious of this court; whether it might be morally so, I would not condescend to notice, in connection with our duty to determine his legal rights here. I do not think we are called upon to excuse appellant's conduct in defending what he conceives to be his rights in the courts of British Columbia. The majority opinion, I fear, is susceptible of the construction that this court might be influenced by such a course as the appellant is there pursuing but for the fact that there exists the excuse for his actions in that regard which is pointed out in the majority opinion. I do not want to ad-

mit that, under any circumstances, should we notice such conduct in connection with the right of appeal from a superior court of this state to this court.