[No. 59750-7-I.   Division One.   July 20, 2009.]

*In the Matter of the Personal Restraint of* GLENN NICHOLS, *Petitioner.*

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Daniel Kalish* and *Deborah A. Dwyer, Deputies*, for respondent.

¶1 BECKER, J. — With information obtained from their inspection of a motel registry, police identified petitioner Glenn Nichols as the suspect in a drug dealing operation, arrested him on a warrant for driving with a suspended license, and found the drugs that led to his convictions. In this personal restraint petition, Nichols argues for the first time that police violated his right under the state constitution to be free from intrusion into his private affairs when they viewed the motel registry without a warrant. He contends his convictions must be vacated and his case remanded with instructions either to suppress the evidence flowing from the information obtained from the motel clerk or to hold a new suppression hearing. Our Supreme Court recently held that a motel registry is a private affair. But trial counsel did not move to suppress on this basis and the failure to do so was not, at the time, ineffective assistance of counsel. Nichols does not explain how he is now entitled to argue for suppression as a remedy. The petition is denied.

## FACTS

¶2 One afternoon in February 2004, Seattle police officers sent a confidential informant to make a controlled buy of cocaine from Toreka Ativalu. When the informant went to Ativalu's house, she said she was out of drugs, but she planned to meet her supplier at a motel soon. The informant went to the motel with Ativalu and a man named Robert. Ativalu asked Robert to call the supplier because she could not remember his room number. After calling, Robert said the supplier was in room 56. The informant saw Ativalu go into and come out of room 56. When she returned, she had several small pieces of crack cocaine. She gave some to the informant, and the informant gave it to a detective.

¶3 Later that afternoon, police officers went to the motel and learned from the desk clerk that the name of the person registered in room 56 was Glenn Nichols. The clerk showed the officers a copy of Nichols' identification card. They checked Nichols' name for warrants and discovered that his driver's license was suspended.

¶4 A short time later, Nichols drove into the motel parking lot and the officers recognized him from the picture on his identification. As Nichols got out of his car, the officers told him they wanted to talk to him because his license was suspended. Nichols tried to get back into his car. The officers arrested him and found a baggie containing rocks of cocaine, another baggie containing marijuana, and $460 in cash, including $10 of the buy money used by the informant.

¶5 Nichols was charged with one count of unlawful possession of cocaine with intent to distribute and one count of unlawful possession of marijuana. Before trial, he moved to suppress the evidence found on him. Nichols' motion to suppress is not in the record before this court, but the trial court's order denying the motion to suppress indicates that the basis for the motion was a recent Supreme Court decision declaring RCW 46.20.289 (driving while license suspended in the third degree) to be unconstitutional. *See City of Redmond v. Moore*, 151 Wn.2d 664, 91 P.3d 875 (2004). The trial court ruled that the officers had probable cause to arrest based on the statute because at the time of the arrest the statute was presumptively valid.[1] Nichols was found guilty as charged on January 23, 2005.[2]

¶6 The following month, the Court of Appeals decided *State v. Jorden*, 126 Wn. App. 70, 107 P.3d 130 (2005). *Jorden* involved a program offered to motels and hotels by the Pierce County Sheriff's Department. The program encouraged officers to review guest registries randomly and to

---

[1] State's Resp. to Personal Restraint Pet., App. D.

[2] State's Resp. to Personal Restraint Pet., App. E.

run warrant checks on guests registered at hotels and motels with reputations for frequent criminal activity. One such random warrant check revealed that motel guest Timothy Jorden had two outstanding felony warrants. Officers went to Jorden's room and found him in proximity to cocaine and drug paraphernalia. Charged with unlawful possession of a controlled substance, Jorden moved to suppress the evidence of the drugs and paraphernalia. He argued that the search of the motel registry violated his privacy rights under the federal and state constitutions. The trial court denied the motion, the evidence was admitted, and Jorden was convicted. Jorden's conviction was affirmed. *State v. Jorden*, 126 Wn. App. 70, 75, 107 P.3d 130 (2005). He petitioned for review to the Supreme Court.

¶7 Meanwhile, on March 31, 2005, Nichols appealed his conviction. He did not raise any issue pertaining to the police inspection of the motel registry. He argued that his rights were violated when the court ordered him to provide a biological sample for DNA (deoxyribonucleic acid) identification. On January 26, 2006, this court stayed his appeal pending the Supreme Court's anticipated decision on the DNA issue.

¶8 On March 29, 2007, two years after filing his appeal, Nichols filed this personal restraint petition asking for a new trial, primarily on the ground that the officers conducted an unlawful search when they viewed the motel registry. Review of the petition was stayed pending a decision in Nichols' direct appeal.

¶9 On April 26, 2007, the Supreme Court reversed the Court of Appeals decision in *Jorden* and held that the police practice of randomly checking names in a motel registry for outstanding warrants violated article I, § 7 of Washington's constitution. *State v. Jorden*, 160 Wn.2d 121, 130, 156 P.3d 893 (2007).

¶10 By June 2007, the Supreme Court had decided the DNA issue adversely to Nichols' claim in his direct appeal. *State v. Surge*, 160 Wn.2d 65, 156 P.3d 208 (2007). This

court lifted the stay on Nichols' appeal and affirmed his conviction, with the mandate issuing on January 18, 2008.

¶11 On February 11, 2008, we lifted the stay on Nichols' personal restraint petition. The State's initial response recommended that the petition be granted. The State cited the Supreme Court's recent decision in *Jorden* and agreed with Nichols that the inspection of his motel registration was a warrantless search of a private affair. Conceding that no exception to the warrant requirement applied, the State accepted that the evidence obtained from his detention and arrest should have been suppressed.

¶12 We appointed counsel for Nichols and asked the parties to brief whether this type of suppression issue can be raised for the first time in a personal restraint proceeding in light of *In re Personal Restraint of Rountree*, 35 Wn. App. 557, 560, 668 P.2d 1292 (1983). In *Rountree*, the petitioner raised a Fourth Amendment suppression issue on direct appeal, abandoned his appeal, and then attempted to raise the same issue in a personal restraint petition. His petition was dismissed on the ground that he had already had a full and fair opportunity to litigate his Fourth Amendment claim at trial and on direct appeal. In so ruling, the *Rountree* court followed *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976).

¶13 In *Stone*, the Supreme Court weighed the utility of the exclusionary rule against the costs of extending the rule to collateral review and found the costs to be too severe.

> The disparity in particular cases between the error committed by the police officer and the windfall afforded a guilty defendant by application of the rule is contrary to the idea of proportionality that is essential to the concept of justice.

*Stone*, 428 U.S. at 490. Where a state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner

> may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of

the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal and the substantial societal costs of application of the rule persist with special force.

*Stone*, 428 U.S. at 494-95 (footnotes omitted).

¶14 The State now argues, citing *Rountree* and *Stone*, that Nichols waived the suppression issue because he did not raise it in the trial court or on direct appeal.

¶15 We agree. This conclusion, while consistent with *Rountree*, is directly compelled by cases holding that a defendant who does not move in the trial court to suppress improperly obtained evidence waives the right to raise the issue on direct appeal. *State v. Baxter*, 68 Wn.2d 416, 423, 413 P.2d 638 (1966); *State v. Mierz*, 127 Wn.2d 460, 468, 901 P.2d 286 (1995). If the issue is waived and cannot be raised on direct appeal, then it cannot be raised in a personal restraint petition either.

¶16 Nichols argues that he should be allowed to raise the motel registry issue now because, unlike in *Rountree*, his claim is based on our state constitution, article I, § 7, under which there are different justifications for the exclusionary rule. Nichols emphasizes what the court stated when declaring a stop and identify statute unconstitutional in *State v. White*, 97 Wn.2d 92, 110, 640 P.2d 1061 (1982): "The important place of the right to privacy in Const. art. I, § 7 seems to us to require that whenever the right is unreasonably violated, the remedy must follow." But in *White*, the defendant moved to suppress in the trial court. The Supreme Court affirmed the trial court's order granting the motion to suppress. The court's comment that the remedy of suppression "must follow" any violation of article I, § 7 was in the context of explaining why the court would not adopt a good faith exception where police acted in accordance with a statute. *White*, 97 Wn.2d at 110. It was not a holding that suppression is directly available as a remedy on appeal or collateral review whenever police conduct could have been challenged at trial but was not. Under *Baxter* and *Mierz*, waiver of a suppression issue occurs whether the grounds

for suppression are based on the state constitution or the federal constitution.

¶17 Nichols also contends that his article I, § 7 claim can be reviewed via a personal restraint petition because at the time of his trial, the dispositive case had not yet been decided. He cites *State v. Brown*, 154 Wn.2d 787, 117 P.3d 336 (2005). In *Brown*, the petitioner's convictions flowed from information obtained when police asked him for identification during a traffic stop of a vehicle in which he was a passenger. He obtained vacation of his convictions through a personal restraint petition based on the Supreme Court's later decision in *State v. Rankin*, 151 Wn.2d 689, 92 P.3d 202 (2004). *Rankin* held that it is a violation of article I, § 7 for police to request identification from a passenger for investigatory purposes unless there is an independent basis to support the request. But in *Brown*, a motion to suppress had been brought in the trial court alleging that the police request for identification was unlawful. *Brown*, 154 Wn.2d at 792. Thus, *Brown* is not on point and it does not overcome *Baxter* and *Mierz*, which compel the conclusion that Nichols waived the motel registry issue when he did not raise it in his motion to suppress.

¶18 Nichols further argues that the case that controls his petition is *In re Personal Restraint of Hews*, 99 Wn.2d 80, 87, 660 P.2d 263 (1983). *Hews* holds that an issue can be raised in a personal restraint petition even if it was not raised on direct appeal, if the petitioner is able to demonstrate actual prejudice stemming from a constitutional error. *Hews*, 99 Wn.2d at 87. But Nichols' problem is not his failure to raise the suppression issue in his direct appeal. It is his failure to move to suppress at trial.

¶19 At oral argument, Nichols also cited *In re Personal Restraint of Taylor*, 105 Wn.2d 683, 717 P.2d 755 (1986), a case where there was a change in search and seizure law after the petitioner's conviction was affirmed on direct appeal. The petitioner in *Taylor* had moved to suppress, unsuccessfully, and had raised and lost the same issue on direct appeal. The Supreme Court held that raising an

issue on direct appeal was not an automatic bar to raising it in a personal restraint petition. Such a petition would be dismissed "only if the prior appeal was denied on the same ground and the ends of justice would not be served by reaching the merits of the subsequent [personal restraint petition]." *Taylor*, 105 Wn.2d at 688. Taylor's petition was properly before the court because there had been a change in the law "and therefore the ends of justice require a redetermination of the constitutionality of his arrest and the subsequent search." *Taylor*, 105 Wn.2d at 689. But Taylor's petition was ultimately denied because the case that changed the law did not meet criteria for retroactive application. The new case, decided under article I, § 7, was *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983). *Ringer* held in part that when police have probable cause to search an automobile, they may do so without a warrant only if they are confronted with exigent circumstances. In deciding that the requirement for exigent circumstances should not be applied retroactively, the *Taylor* court emphasized considerations similar to those reflected in *Stone*:

> [T]he effect on the administration of justice strongly dictates against retroactive application of new rules on collateral review when the new rule does not affect the truth-finding aspect of trial. Furthermore, we believe it would be unreasonable to expect law enforcement authorities to have foreseen the bright line rule drawn in *Ringer* prior to its announcement. In sum, the rule announced in *Ringer* has little to do with the truth-finding function of a criminal trial and retroactive application would clearly disrupt the administration of justice.

*Taylor*, 105 Wn.2d at 691-92.

¶20 Nothing in *Hews* or *Taylor* undermines the holding of *Baxter* and *Mierz* that a motion to suppress must be made at trial or the issue is waived. That holding makes sense. A trial court cannot even begin to assess whether a search is unreasonable under article I, § 7 or the Fourth Amendment unless the underlying facts and the legal argument are brought to the court's attention through a motion to suppress. It would be unreasonable to view as constitutional

error a trial court's failure to apply the exclusionary rule sua sponte.

¶21 Furthermore, even if Nichols had not waived the issue—that is, even if he had moved at trial to suppress the fruits of the motel registry search—he still would be required under *Taylor* to show that *Jorden* should be applied retroactively. He has not attempted to make such a showing, and it is unlikely that he could. There is no apparent reason why law enforcement authorities would have been able to foresee *Jorden* any more than they could have foreseen *Ringer*.

¶22 We conclude that by failing to move to suppress the fruits of the motel registry search, Nichols waived his claim that admission of the evidence was an error under article I, § 7.

## INEFFECTIVE ASSISTANCE

■ ¶23 Nichols argues ineffective assistance of counsel, both at the trial level and on appeal, as an alternative basis for granting relief from his convictions. Although Nichols waived any claim that the motel registry search violated his rights under article I, § 7 or the Fourth Amendment, his claim that he was actually prejudiced by constitutional error can be analyzed under the Sixth Amendment as a failure of counsel to make a competent suppression motion. *Cf. Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (*Stone* does not preclude habeas review of an alleged Fourth Amendment violation when encompassed within a claim of ineffective assistance).

■ ¶24 To establish ineffective assistance of counsel, Nichols must show both deficient performance and resulting prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (counsel's failure to move for suppression of drugs abandoned in vehicle after defendant was unlawfully seized was both deficient and prejudicial). Defense counsel's conduct is deficient if it falls below an objective standard of reasonableness.

A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington*, 466 U.S. 668, 690, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman*, 477 U.S. at 384.

¶25 Had Nichols' trial counsel filed a motion to suppress alleging that the search of the motel registry violated his right of privacy, hindsight shows that such a motion likely would have been successful, if not at the trial level then ultimately on direct appeal or collateral attack. But that does not necessarily mean counsel was ineffective in failing to bring the motion. Consideration must be given to counsel's overall performance because otherwise it is "all too easy" for a court to conclude that a particular act or omission of counsel was deficient performance. *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, *quoted in Kimmelman*, 477 U.S. at 386-87.

¶26 In *Kimmelman*, the Court concluded that trial counsel's performance was deficient because he did not timely move to suppress a stained sheet that police had seized from his home without a warrant. The record showed that

counsel did not ask for any discovery and was therefore unaware of the sheet until the beginning of trial. Counsel did not think the case would go to trial because he was told that the victim did not want to proceed. Even under the "highly demanding" *Strickland* standard, this was substandard performance. *Kimmelman*, 477 U.S. at 382.

¶27 At the time of Nichols' trial, no case had addressed whether information in a motel registry was a private affair that was entitled to privacy protection under article I, § 7. Nichols argues that despite the lack of a case directly on point, trial and appellate counsel should have spotted the issue because it was well established that article I, § 7 is stronger in its protection of privacy than the Fourth Amendment. *See, e.g., State v. Gunwall*, 106 Wn.2d 54, 65, 720 P.2d 808 (1986) (telephone records and telephone line protected); *State v. Boland*, 115 Wn.2d 571, 800 P.2d 1112 (1990) (trash containers outside house protected); *State v. Parker*, 139 Wn.2d 486, 987 P.2d 73 (1999) (personal belongings of passenger not subject to search when driver arrested).

¶28 Applying the demanding standard of *Strickland*, we cannot conclude that trial counsel for Nichols fell below reasonable professional norms by failing to break new ground under article I, § 7. There is no indication that counsel was unprepared or thoughtless. Indeed, trial counsel's use of *Moore* to argue that the police lacked probable cause to arrest Nichols shows skill in developing a new argument suggested by a recent appellate decision.

¶29 "Moreover, a claim of ineffectiveness due to failure to move to suppress on a particular basis can be undermined to some degree if counsel moved to suppress on another ground." *State v. Nichols*, 161 Wn.2d 1, 15, 162 P.3d 1122 (2007). Caleb Nichols was convicted of possessing methamphetamine found on him when police stopped a car in which he was a passenger. On appeal he argued that counsel was ineffective for failing to argue that the stop was pretextual. The Supreme Court rejected this claim partly because trial counsel did make a motion to suppress, although on other

grounds, and that fact suggested "a reasoned decision not to move to suppress on the basis of pretext." *Nichols*, 161 Wn.2d at 15. Similarly here, the fact that trial counsel did make a motion to suppress indicates the exercise of reasonable professional judgment. Counsel simply did not anticipate *Jorden. Cf. State v. Studd*, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999) ("counsel can hardly be faulted for requesting a jury instruction based upon a then-unquestioned [11 *Washington Practice: Washington Pattern Jury Instruction: Criminal*] 16.02").

¶30 The result is no different when we consider the effectiveness of appellate counsel. Even though appellate counsel could have raised a supplemental assignment of error after the Supreme Court issued its decision in *Jorden*, the underlying question would still have been whether trial counsel was ineffective in failing to raise the motel registry issue in a motion to suppress.

¶31 We conclude Nichols has not met the burden of showing that trial counsel rendered ineffective assistance by failing to anticipate *Jorden*.

## AUTHENTICATION ISSUE

¶32 Nichols also argues that the trial court violated his constitutional rights by admitting a photocopy of the money the police gave to the confidential informant to prove that Nichols was guilty of possession with intent to distribute cocaine. He contends the photocopy was inadmissible because it was not properly authenticated. Nichols has not identified what constitutional right was violated by the alleged error. Bare assertions are not sufficient to command judicial consideration and discussion in a personal restraint proceeding. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086, *cert. denied*, 506 U.S. 958 (1992).

¶33 Petition denied.

Cox and ELLINGTON, JJ., concur.

Reconsideration denied September 11, 2009.

Review granted at 168 Wn.2d 1010 (2010).